1
2
3
4
5
6
7                         UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT OF CALIFORNIA

9

10   ROBIN DASENBROCK,                    Case No.  1:15-cv-00460-LJO-MJS (HC)

11            Petitioner,                 **FINDINGS AND RECOMMENDATION TO
                                          DENY PETITION FOR WRIT OF HABEAS
12        v.                              CORPUS**

13   JOE A. LIZZARAGA, Warden             **THIRTY (30) DAY OBJECTION DEADLINE**

14            Respondent.

15

16

17

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

19   corpus under 28 U.S.C. § 2254. Joe A. Lizarraga, Warden of Mule Creek State Prison, is

20   hereby substituted as the proper named respondent pursuant to Rule 25(d) of the

21   Federal Rules of Civil Procedure. Respondent is represented by Krista Leigh Pollard of

22   the Office of the California Attorney General.

23          Petitioner challenges the adverse adjudication of a prison Rules Violation Report

24   for battery on an inmate. He alleges the following due process violations in relation to the

25   disciplinary proceedings: (1) he was not provided the evidence against him; (2) he was

26   denied an opportunity to present witnesses and evidence; (3) prison officials failed to

27   appoint an appropriate investigative employee; (4) the disciplinary finding is based upon

insufficient evidence; and (5) prison officials did not conduct a mental health evaluation prior to the hearing. (ECF No. 1 at 8.)

## I. Procedural History

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1991 judgment of the Orange County Superior Court convicting him on multiple counts of rape, first degree burglary, oral copulation, assault, sodomy, and robbery, with associated enhancements. (Answer, Exh. 1, ECF No. 13-1.) He is serving a sentence of 142 years and 4 months. (Id.)

On April 26, 2013, an incident occurred between Petitioner and Inmate Acosta. (See Petition, ECF No. 1 at 51.) As a result, on April 27, 2013, Petitioner was issued a Rules Violation Report ("RVR") for battery on an inmate. (Id.)

The RVR was heard on May 8, 2013. The Senior Hearing Officer found Petitioner guilty and assessed a 90 day loss of credits. (Id at 53-55.)

Petitioner appealed the disciplinary finding, and his appeal was granted in part. (Id. at 68-69.) The appeal reviewer noted that Petitioner's due process rights were violated in the adjudication of his RVR because he was denied witnesses who could provide relevant evidence. (Id.) The RVR was ordered reissued and reheard.

The rehearing occurred on September 5, 2013. (Id. at 82.) Petitioner again was found guilty and assessed a 90 day loss of credits. (Id. at 82-85.) Petitioner appealed. (Id. at 76.) His appeal bypassed the first level of review and was denied at the second and third levels of review. (Id. at 76-77.)

On August 4, 2014, Petitioner filed a petition for writ of habeas corpus in the Kings County Superior Court. (Answer, Exh. 2, ECF No. 13-2 and 13-3.) Therein, he alleged the following claims regarding his disciplinary proceedings: (1) his due process rights were violated because evidence was not disclosed to him; (2) he was denied his right to present witnesses and evidence; (3) prison officials failed to conduct a mental health review; (4) he was denied his right to a competent and mutually agreed upon

2

investigative employee; and (5) the evidence against him was insufficient. On August 28, 2014, the Superior Court denied the petition in a reasoned decision. (Answer, Exh. 3, ECF No. 13-4.)

On October 7, 2014, Petitioner raised the same claims in a petition for writ of habeas corpus to the California Court of Appeal, Fifth Appellate District. (Answer, Exh. 4, ECF No. 13-5 and 13-6.) The petition was summarily denied on October 23, 2014. (Answer, Exh. 5, ECF No. 13-7.)

On December 3, 2014, Petitioner raised the same claims in a petition for writ of habeas corpus to the California Supreme Court. (Answer, Exh. 6, ECF Nos. 13-8 and 13-9.) The petition was summarily denied on February 25, 2015. (Answer, Exh. 7, ECF No. 13-10.)

Petitioner filed the instant petition for writ of habeas corpus on March 25, 2015. (ECF No. 1.) On May 29, 2015, Respondent filed an answer. (ECF No. 13.) On July 13, 2015, Petitioner filed a traverse. (ECF No. 16.) The matter is deemed submitted.

## II.     Factual Background

As stated, on April 26, 2013, an incident occurred between Petitioner and Inmate Acosta. According to Petitioner, he and Acosta were "fighting," i.e., engaged in mutual combat. Acosta was injured and, on April 27, 2013, he reported to prison medical staff that he was hit by Petitioner. (ECF No. 1 at 59.) Petitioner was thereafter taken to medical, where he reported that he himself had suffered a bruise on the back of his head from being hit by Acosta. (Id. at 60.)

On April 27, 2013, Petitioner received an RVR for battery on an inmate. (Id. at 51.) K. Estes was assigned as an Investigative Employee ("IE"). (Id. at 52.) Estes interviewed Petitioner. Petitioner requested that Inmate Acosta's knee be checked for injuries. (Id. at 57.) It appears this request was not pursued. Petitioner also identified his "pod-mates," Inmates Harding, Morales, Ojeda, and Wendemagengehu, as witnesses. (See id. at 54.) Petitioner submitted specific questions to be asked of the witnesses, and

they were interviewed prior to the hearing. (See id. at 56-57.) Harding stated that he did not see Petitioner hit Acosta and that the two were "just wrestling." Wendemagengehu also stated that Acosta and Petitioner were "just wrestling." Morales and Ojeda stated, "No comment." (Id.)

On May 3, 2013, Petitioner was evaluated by Mental Health Clinician Farrell. (Id. at 58.) Farrell concluded that a mental disorder did not appear to contribute to the offense and there were no mental health factors that the hearing officer should consider in assessing the penalty. (Id.)

Prior to the hearing on his RVR, Petitioner was provided with seven Confidential Information Disclosure Forms. (Id at 61-67.) The forms are substantially identical. They state that "[t]he identify of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution." They state that the information is considered reliable because (1) more than one source independently provided the same information, and (2) part of the information provided by the source(s) had already been proven true. The information received was described generally as follows: "On Saturday 4/27/13, reliable confidential information was received indicating that on 4/26/13, you committed battery on Inmate Acosta (AL5771) in cell G3-40 by striking him in the face with your fist." (Id.)

On May 8, 2013, the RVR was heard by Correctional Lieutenant Smith. (Id. at 53.) Petitioner pled not guilty to the charge and stated that he was guilty of mutual combat. (Id at 54.) Smith denied Petitioner's request to call Inmates Harding, Morales, Ojeda, and Wendemagengehu as witnesses, stating that, based on their interview statements, these witnesses had "no comment or any relevant or additional information that would help" Petitioner. (Id.)

Petitioner was found guilty based on the following findings: (1) the RVR, in which Correctional Sergeant J. Martin stated that he had received reliable confidential information indicating that Petitioner had committed battery on Inmate Acosta, (2) the

4

Medical Report of Injury documenting injuries for both Acosta and Petitioner, (3) the seven confidential memoranda, which were found reliable because they were corroborated by the Medical Report of Injury, (4) Petitioner's partial admission that he had engaged in mutual combat, and (5) Petitioner's failure to present any additional information or evidence to mitigate or refute the charges. (Id. at 54-55.)

The hearing officer noted that Petitioner and Acosta had refused to sign a compatibility chrono and therefore were designated as enemies. (Id. at 55.) According to Petitioner, he requested to sign a compatibility chrono to show that he and Acosta could get along on the yard. (Id. at 16.)

Petitioner appealed the disciplinary finding. (Id. at 47.) His appeal was partially granted on the ground that the hearing officer's failure to call Harding and Wendemagengehu as witnesses violated Petitioner's due process rights because their interviews indicated that their testimony would be relevant to the charged offense. (Id. at 68-69.) The RVR was ordered reissued and reheard. (Id.)

On August 28, 2013, Petitioner received the reissued RVR. (Id. at 80.) B. Phillips was assigned to serve as Petitioner's staff assistant. (Id. at 81.) Estes again was assigned to serve as IE. (See id. at 81.) According to Petitioner, he objected to Estes' continued involvement in the RVR. However, Estes noted that Petitioner had no such objections. (Id. at 87.)

Also according to Petitioner, he submitted an additional question to be asked of his witnesses: "did you see both inmates fighting." (Id. at 17.) This question already had been asked of Inmates Morales, Ojeda, and Wendemagengehu. (Id. at 56-57.) Harding, however, had only had been asked, "Did you see the two inmates fighting on the floor in two places?", to which he responded, "Just wrestling around." (Id. at 56.) Estes did not make note of this additional question, nor does it appear that he submitted the question to Harding.

Petitioner reiterated his request that Acosta's knee be inspected for injuries. He also requested three additional witnesses that were in cell G40 at the time of the incident. However he could not recall their names and did not provide any other information to assist in locating them. (Id. at 88.) Estes stated that he was therefore unable to locate these three witnesses. (Id.)

On September 5, 2013, the RVR was reheard by Correctional Lieutenant Carrillo. (Id. at 82.) Petitioner pled not guilty and reiterated his claim that the incident involved mutual combat. He stated that Acosta struck Petitioner first. (Id. at 83.) Petitioner claims that, at the hearing, he objected to Estes' role as IE, perceived deficiencies in the IE report, Estes' failure to locate witnesses and ask Petitioner's additional question, the hearing officer's decision not to reveal the names of confidential informants, the use of confidential information against him, and the lack of information contained in the Confidential Information Disclosure Forms. (Id at 17-18.)

Petitioner's request to call Inmates Harding, Morales, Ojeda, and Wendemagengehu had been granted. (Id at 83.) However, the hearing officer noted that Petitioner had no additional questions for the witnesses, and thus he only reviewed the testimony from the inmates' interviews, which was unchanged from the prior hearing. Petitioner was found guilty based on the following evidence: (1) the contents of the RVR, (2) Acosta's Medical Report of Injury, (3) the contents of the confidential memoranda, and (4) Petitioner's failure to present information or evidence to mitigate or refute the charge. (Id at 84.)

According to Petitioner, he underwent a second Mental Health Assessment in relation to his RVR on September 12, 2013. (Id. at 20.)

**III.    Jurisdiction**

Respondent challenges the Court's habeas jurisdiction.

Relief by way of a writ of habeas corpus extends to a prisoner under a judgment of a state court if the custody violates the Constitution, laws, or treaties of the United

States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Habeas corpus jurisdiction exists when a petitioner seeks expungement of a disciplinary conviction which falls within the "core of habeas corpus," meaning that success on the petition will lead to speedier release. Nettles v. Grounds, 830 F.3d 922, 927, 934 (9th Cir. 2016) (en banc); see also Skinner v. Switzer, 562 U.S. 521, 535 n.13 (2011).

In this case, Petitioner asserts that he suffered a violation of his right to due process as guaranteed by the U.S. Constitution. He is serving a determinate term and challenges a disciplinary proceeding that resulted in a 90 day loss of credits. Time credits work to shorten a determinate term of incarceration. Thus, a restoration of time credits would actually speed Petitioner's release. His claims therefore fall within the core of habeas relief and are cognizable in this action.

Respondent argues that it is possible the restoration of time credits will not affect Petitioner's sentence. Respondent points to title 15, sections 3327 and 3328 of the California Code of Regulations, under which Petitioner can apply to have his time credits restored following a disciplinary-free period of between 90 and 180 days. If Petitioner successfully pursued such an application, expungement of the disciplinary violation would have no effect on his sentence because the credits already would have been restored through other means.

The Court notes that restoration of time credits under these regulations "is not automatic nor is it guaranteed." Sakellaridis v. Davey, No. 1:14-CV-01527-LJO, 2015 WL 1606971, at *3 (E.D. Cal. Apr. 9, 2015), report and recommendation adopted, No. 1:14-CV-01527-LJO, 2015 WL 4394650 (E.D. Cal. July 16, 2015). Well over 180 days passed between the ruling on Petitioner's RVR and the filing of the instant petition, and even more time passed before the filing of Respondent's answer. However, Respondent does not move to dismiss the petition as moot, nor does he present evidence to suggest that the petition has been mooted by the successful pursuit of an application under sections

3327 and 3328. <u>See</u> <u>Torres v. Grounds</u>, No. C 13-3312 SBA, 2014 WL 4827271, at *3 (N.D. Cal. Sept. 26, 2014) (holding petition was moot and the court lacked jurisdiction following restoration of credits under section 3328). Absent evidence to suggest that the lost credits have been restored, the Court must conclude that a favorable ruling on the petition will result in Petitioner's speedier release.

Respondent also suggests that the effect of the lost credits on Petitioner's sentence is speculative because Petitioner's sentence is long and he likely will die before reaping the benefits of 90 days of restored credits. Respondent cites no authority to support this argument, beyond the general principle that habeas jurisdiction does not exist where the impact of relief on a Petitioner's sentence is speculative.

Here, the impact of a 90 day credit restoration is not speculative. It will reduce Petitioner's sentence by 90 days. Ultimately, Petitioner may not live long enough to see the benefit of any credit restoration. However, this is true for any habeas petitioner. Death itself is unpredictable and this Court finds no precedent requiring it to speculate as to how long inmates will live before reaching the merits of their claims.

Lastly, the Court notes that Petitioner challenges RVR proceedings at the California Substance Abuse Treatment Facility in Corcoran, California, and, at the time of filing, Petitioner remained incarcerated there. Thus, his Petitioner is properly brought in this district. 28 U.S.C. § 2241(d)

Accordingly, the Court concludes that it has jurisdiction over the petition.

## V.     Exhaustion and Timeliness

Respondent concedes that the petition is timely filed. 28 U.S.C. § 2244(d). Respondent also concedes that Petitioner exhausted at least some of his claims in state court. 28 U.S.C. § 2254(b)(1)(A). To the extent any claims are unexhausted, the Court nonetheless concludes they may be denied on the merits. 28 U.S.C. § 2254(b)(2).

## VI.    Legal Standard of Review

The instant petition was filed after April 24, 1996, and thus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, a petition for a writ of habeas corpus by a prisoner in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.    Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S.Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. This is because "state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

**2.     Contrary to or an Unreasonable Application of Federal Law**

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical

factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stressed that "an unreasonable application of federal law is different from an incorrect application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131 S. Ct. at 786).

### 3.    Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

U.S. 112, 121-22 (2007) (holding that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. <u>See</u> <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991); <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the <u>Strickland</u> prejudice standard is applied and courts do not engage in a separate analysis applying the <u>Brecht</u> standard. <u>Avila v. Galaza</u>, 297 F.3d 911, 918, n.7 (2002); <u>Musalin v. Lamarque</u>, 555 F.3d 830, 834 (9th Cir. 2009).

## VI.   Review of Petition

### A.    State Court Decision

Petitioner's petitions to the California Court of Appeal and the California Supreme Court were summarily denied. Because the Supreme Court opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the last state court to have issued a reasoned opinion. <u>See</u> <u>Ylst</u>, 501 U.S. at 804-05 & n.3; <u>see also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

The Superior Court denied Petitioner's due process claims in a reasoned decision as follows:

> A prisoner is entitled to due process at a disciplinary hearing, but not to the same rights as a defendant at a criminal trial. (<u>In re Estrada</u> (1996) 47 Cal.App.4th 1688, 1694.) Unlike a guilt finding at a criminal trial, a disciplinary finding requires only "some" supporting evidence to satisfy due process concerns. (<u>Superintendent v. Hill</u> (1985) 472 U.S. 445, 455-456, italics added; <u>In re Zepeda</u> (2006) 141 Cal.App.4th 1493, 1498.) This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that

could support the conclusion reached by the disciplinary board." (<u>Superintendent v. Hill</u>, <u>supra</u>, 472 U.S. at pp. 455-456.) Further, the due process requirements imposed by the Federal Constitution do not authorize this court to reverse prison disciplinary actions and/or determinations simply because, in this court's opinion, there is a realistic possibility the Petitioner may not be guilty of the charged infraction. (<u>In re Zepeda</u>, <u>supra</u>, 141 Cal. App. 4th at p. 1498.)

In this case, the finding of Petitioner's guilt on rehearing of Log No. G-13-04-027R is based upon confidential information from multiple sources stating that Respondent struck Inmate Acosta in the face with his fist. Injuries were found on the back of Petitioner's head and a reddened area to the right eye of Inmate Acosta, consistent with a finding of mutual combat <u>or</u> battery; Petitioner is cited as stating he was guilty of mutual combat, but not battery. The finding of guilt is further supported by Inmate Acosta's statement to medical staff indicating that Petitioner had struck him on the side of his eye the prior day following TB testing, and Petitioner's statement that he had been punched in the back of the head. For each of the confidential sources of information considered by the Senior Hearing Officer, a Confidential Information Disclosure Form was provided to Petitioner finding the information to be reliable (proven true by the consistent medical injuries found to have been suffered by Inmate Acosta). The Disclosure Forms meet the reliability requirements of the California Code of Regulations, title 15, Section 3321, subdivision (c)(4) [Part of the information provided is corroborated through investigation or by information provided by non-confidential sources]. In addition, it is relevant to note that the Senior Hearing Officer considered the witness statements provided by Inmates Harding, Morales, Ojeda, and Wendemagengehu. Taken together, there appears to be "some evidence" in the record to support the findings of guilty which is not appropriately reevaluted or reweighed by this tribunal.

Petitioner also contends that a new mental health evaluation should have been conducted prior to the rehearing of Log No. G-13-04-027R. California Code of Regulation, title 15, Section 3317 provides for a Mental Health Assessment to be performed in connection with a CDC 115 Rules Violation Report. However, the purpose of the Assessment is to determine whether the incident may have resulted from a mental health issue. Here, because it was already determined in connection with the initial hearing of Log No.

G-13-04-027 that Petitioner did not exhibit any bizarre, unusual, or uncharacteristic behavior in connection with the incident; it does not appear prejudicial that the mental health assessment in connection with the rehearing was not conducted until after the hearing was conducted.

Based upon the foregoing and this court's review of the entire record before it, IT IS HEREBY ORDRED, the petition denied. (See, People v. Duvall (1995) 9 Cal. 4th 464, 474.)

(ECF No. 13-4.)

### B.    Applicable Law

The law concerning a prisoner's Fourteenth Amendment liberty interest in good conduct time is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good conduct time, an inmate has a liberty interest in good conduct time when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. Id. at 557. Inmates involved in a disciplinary action are entitled to procedural protections under the Due Process Clause, but not to the full array of rights afforded to criminal defendants. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent v. Hill, 472 U.S. 445, 454-455 (1984)).

When a prison disciplinary proceeding may result in the loss of good conduct time, due process requires that the prisoner receive: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 563-571; Hill, 472 U.S. at 454.

14

In addition, the disciplinary decision must be supported by "some evidence from which the finding of the administrative tribunal could be deduced." Hill, 472 U.S. at 445. A court must refrain from making its own assessment of the credibility of witnesses or second guessing the fact finding determinations and decisions of the disciplinary board. Id.. Thus, the "some evidence" standard under Hill is "minimally stringent," and the courts may not "set aside decisions of prison administrators that have some basis in fact." Id. at 455-56. Further, the existing evidence need not "logically preclude" any conclusion other than the one reached by the hearing officer. Id. at 457.

### C.    Claim One: Failure to Disclose Evidence

Petitioner claims that his due process rights were violated because confidential information was used against him in the disciplinary proceeding. He states that he was advised only that reliable information had been received indicating Petitioner had committed a battery on Acosta. Petitioner was not provided further details regarding the confidential allegations and thus was unable to refute them. Furthermore, Petitioner opines that it was unnecessary to maintain the confidentiality of these statements because the statements could only have been provided by Petitioner's cell mates, and he therefore already was aware of the informants' identities.

### i.    Confrontation of Witnesses

Respondent characterizes this claim as a demand to confront adverse witnesses. The Court does not read the petition as asserting such a claim. The state court likewise did not address such a claim. Rather, Petitioner appears to challenge the reliability of the confidential information and his inability to refute it. Nevertheless, Respondent is correct that Petitioner has no right to confront adverse witnesses. Wolff, 418 U.S. at 567-69. To the extent the petition may be read to imply such a claim, Petitioner is not entitled to relief.

### ii.    Reliability of Confidential Sources

A prison disciplinary determination derived from the statement of an unidentified inmate informant satisfies due process when the record contains some indicia the statement is reliable. <u>Zimmerlee v. Keeney</u>, 831 F.2d 183, 186 (9th Cir. 1987). "Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an in camera review of the documentation from which credibility was assessed." <u>Id.</u> at 186–87. Additionally, "[p]roof that an informant previously supplied reliable information is sufficient." <u>Id.</u> at 187. The record must also contain "a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." <u>Id.</u>

Here, the state court concluded that the information from confidential sources was sufficiently reliable because it had been corroborated through investigation or information provided by non-confidential sources.

The Court notes that each of the Confidential Information Disclosure Forms states that the source cannot be identified without jeopardizing the safety of the source or the institution. Each Form further states that the information is reliable because (1) more than one source provided consistent information, and (2) part of the information was already proven to be true. The Court finds it significant that seven separate sources independently provided consistent information, and this information also was consistent with the Medical Report of Injury provided by Acosta. Based on these factors, Petitioner has not shown that the state court's decision resulted in a decision that is "contrary to" federal law or based on "an unreasonable determination of the facts." 28 U.S.C. § 2254(d); <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) (citing <u>Williams</u>, 529 U.S. at 405-06).

### iii.    Level of Detail

Petitioner claims that he was provided insufficient detail regarding the statements of confidential sources to be able to refute their allegations.

The state court did not address this argument. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion "does not require that there be an opinion from the state court explaining the state court's reasoning." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

Wolff requires that a prisoner receive notice of the disciplinary charges and a written statement by the fact finders of the evidence they relied on and reasons for taking disciplinary action. 418 U.S. at 563-65. Here, there is no dispute that Petitioner received written notice of the charge of battery on an inmate. That notice contained sufficient information to inform Petitioner that the charge arose out of the incident in which Petitioner is alleged to have hit Acosta. This was sufficient to "inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564.

The disciplinary decision also informed Petitioner that the guilty finding was based on: (1) the contents of the RVR, (2) Acosta's Medical Report of Injury, (3) the contents of the confidential memoranda, and (4) Petitioner's failure to present information or evidence to mitigate or refute the charge. (Id at 84.) Thus, Petitioner received all of the

process he was due under <u>Wolff</u>.

Furthermore, it does not appear that the failure to disclose additional detail prejudiced Petitioner. Petitioner was informed, prior to the hearing, that the confidential sources indicated Petitioner had committed battery by striking Inmate Acosta in the face. Petitioner claimed at the hearing that he struck Acosta during mutual combat. Two of his witnesses provided statements that Petitioner and Acosta were "just wrestling." Petitioner does not purport to have additional evidence to support this defense. A fairminded jurist could thus conclude that any failure to provide additional detail did not have a substantial or injurious effect on the proceedings. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>Harrington</u>, 131 S. Ct. at 784-85.

Petitioner is not entitled to relief on this claim.

### D.     Claim Two: Right to Call Witnesses and Present Evidence

Petitioner claims that his due process rights were violated because (1) three unidentified witnesses were not called, and (2) one of his original witnesses was not specifically asked whether he has seen Petitioner and Acosta fighting. This claim was summarily rejected by the state court. Thus, this Court must determine "what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Harrington</u>, 131 S. Ct. at 786.

Petitioner sought to interview and call three inmates whose names he did not know, and who were in his housing unit on the day of the incident. Estes determined that, without additional information, these inmates could not be located. Petitioner contends that these witnesses necessarily must have been three of the seven confidential sources against him. Thus, they could have been identified by looking at the confidential memoranda.

Multiple courts have held that prison officials are not required to conduct an investigation to identify and locate an inmate's desired witnesses. Haney v. Hernandez, No. 1:10-CV-02134-LJO, 2012 WL 5304468, at *5 (E.D. Cal. Oct. 25, 2012), report and recommendation adopted, (E.D. Cal. Nov. 6, 2012) ("To the extent that Plaintiff is alleging that Defendant Hernandez was required to conduct a further investigation to determine who his witness was, this is beyond what due process requires."; Gastellum v. Sandor, No. 5:10-cv-00152-DDP, 2011 WL 7962488, at *6 (C.D. Cal. Mar. 30, 2011) (no constitutional requirement for investigative officer to investigate the matter to inmate's satisfaction to comply with due process); Low v. Stanton, No. 2:05-cv-02211-MCE-DAD, 2009 WL 737053, at *7 (E.D. Cal. Mar. 19, 2009) (denying inmate's broad request to call all inmates housed in the housing unit as witnesses was reasonable and appropriate where inmate failed to identify specific inmate witnesses); Soto v. Runnels, No. 3:02-cv0109-MMC (PR), 2002 WL 31236204, at *2 (N.D. Cal. Oct. 2, 2002) (finding prison officials are not required to locate a witness). Thus, a fairminded jurist could conclude that Estes' failure to take additional steps to identify the three additional witnesses does not implicate the due process clause.

Additionally, a fairminded jurist could conclude that the failure to locate these witnesses was not prejudicial. According to Petitioner, the unidentified witnesses necessarily were the sources of confidential information against him. As such, he had no constitutional right to confront them. Wolff, 418 U.S. at 567-69.

Finally, a fairminded jurist could conclude that failing to ask Harding, "did you see both inmates fighting?", was not prejudicial. Harding previously had been asked, "Did you see the two inmates fighting on the floor in two places?", to which he responded, "Just wrestling around." (Id. at 56.) It is unclear how Petitioner's additional question could have aided his defense or how this deficiency had a substantial or injurious effect on the proceedings. See Brecht, 507 U.S. at 623.

Petitioner is not entitled to relief on this claim.

**E.    Claim Three: Appointment of an Investigative Employee**

Petitioner objected to Estes acting as the Investigative Employee on his reissued RVR. This claim was summarily rejected by the state court. Thus, this Court must determine "what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington, 131 S. Ct. at 786. A fairminded jurist could conclude that the state court properly rejected this claim because the allegation does not implicate Petitioner's federally protected due process rights.

As stated, Wolff requires that inmates be provided legal assistance where "the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 570. Here, Petitioner was provided a Staff Assistant, i.e., B. Phillips.

Unlike a Staff Assistant, an Investigative Employee is appointed to assist the hearing officer, not the inmate. Cal. Code Regs. tit. 15, § 3318(a). There is no federally recognized constitutional right to an Investigative Employee. Larkin v. Davey, No. 2:14-CV-2497 TLN GGH, 2015 WL 1440616, at *6 (E.D. Cal. Mar. 27, 2015) ("[T]here is no right to a thorough investigative report or even an investigation, nor even a right to assignment of an investigative employee, which was provided to petitioner in this case."); Fuqua v. Swarthout, 2013 WL 5493373, *5 (E.D. Cal. Oct. 2, 2013) (no right to investigative employee); Pickett v. Williams, 2011 WL 4913573, *4 (D. Or.Aug. 23, 2011) (no right to investigation); Tolliver v. Santoro, No. CV 15-09562-VBF (AS), 2016 WL 8732347, at *11 (C.D. Cal. May 20, 2016), report and recommendation adopted, 2016 WL 4035958 (C.D. Cal. July 8, 2016) ("[T]he Court has been unable to locate, any authority, federal or otherwise, establishing that an inmate is guaranteed the effective assistance of his assigned investigative employee.")

Petitioner's claim does not implicate any of the protections mandated under Wolff. Thus, Petitioner is not entitled to relief on this claim.

### F. Claim Four: Insufficient Evidence

Petitioner contends that the evidence against him was insufficient to support a finding of guilt. Under federal law, the disciplinary finding must only be supported by "some evidence." Hill, 472 U.S. at 455-56. Here, the Superior Court concluded that there was "some evidence" to support the finding in the form of confidential witness statements, the report made by Inmate Acosta, and the injuries suffered by Inmate Acosta and Petitioner (which, the Superior Court stated, could support a finding of mutual combat or battery). Indeed, the report of Acosta's injuries, standing alone, constitutes "some evidence" to support a finding of battery on an inmate. That the evidence also could support a finding of mutual combat does not undermine the hearing officer's determination regarding Petitioner's guilt. The evidence need not "logically preclude" all conclusions other than the one reached by the hearing officer. Hill, 472 U.S. at 457 (evidence need not "logically preclude" other alternative theories).

Petitioner has not shown that the state court's decision resulted in a decision that is "contrary to" federal law or based on "an unreasonable determination of the facts." 28 U.S.C. § 2254(d); Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). The state court decision properly applied clearly established Supreme Court law and the state court's factual determinations were not objectively unreasonable. Accordingly, Petitioner is not entitled to relief on this claim.

### G. Claim Five: Mental Health Evaluation

Petitioner received a mental health evaluation prior to his initial disciplinary proceeding. He did not receive a second evaluation prior to the second hearing. He contends that the lack of said evaluation violated his due process rights.

As the state court explained, title 15, section 3317 of the California Code of Regulations provides for a Mental Health Assessment to be performed in connection with RVRs under certain circumstances. Petitioner's right to such an assessment arises, if at all, under state law. A claim based entirely on state law does not provide a basis for

habeas relief in federal court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Swarthout v.</u> <u>Cooke</u>, 562 U.S. 216, 219 (2011).

Furthermore, even if Petitioner's claim implicated his federal due process right, it would appear that any defect in failing to obtain a second mental health assessment was harmless. The purpose of the assessment is to determine whether "mental illness or developmental disability/cognitive or adaptive functioning deficits may have contributed to behavior resulting in a Rules Violation Report." Cal. Code Regs. tit.15, § 3317(a). It is not designed to determine a prisoner's mental state at the time of the hearing. Petitioner does not suggest how the failure to procure a second assessment prior to the second hearing had a substantial or injurious effect on his disciplinary proceedings. <u>See</u> <u>Brecht</u> <u>v. Abrahamson</u>, 507 U.S. 619, 623 (1993). Furthermore, Petitioner underwent a second mental health assessment approximately two weeks after his second disciplinary hearing. He does not suggest that the results of this assessment were inconsistent with or contrary to the first.

Petitioner is not entitled to relief on this claim.

**V. Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

The findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **thirty** (30) days after being served with the findings and recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772

F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   June 12, 2017         /s/ *Michael J. Seng*
                               UNITED STATES MAGISTRATE JUDGE